J-M04001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CESAR RUIZ | : | |
| | : | |
| Petitioner | : | No. 41 WDM 2025 |

Appeal from the Order Entered July 25, 2025
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0001585-2024

BEFORE:   SULLIVAN, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: September 24, 2025**

Cesar Ruiz ("Petitioner") has filed a "Petition for Specialized Review Pursuant to Pa.R.A.P. 1610" ("Petition"), seeking review of the July 25, 2025 order of the Court of Common Pleas of Allegheny County ("trial court"), which denied Petitioner's motion for modification/reinstatement of bail.[1]  Because the trial court denied Petitioner's motion, and consequently denied him bail entirely, yet declined to hold a hearing on Petitioner's motion as required by

_____

[*] Former Justice specially assigned to the Superior Court.

[1] ***See In the Interest of N.E.M.***, 311 A.3d 1088, 1101 (Pa. 2024) (holding that this Court "lacks the discretion to decide whether to grant or deny these petitions for specialized review") and ***Commonwealth v. Miller***, 319 A.3d 575, 580 (Pa. Super. 2024) (applying ***N.E.M.*** to petitions for specialized review filed under Pa.R.A.P. 1610).

*Commonwealth v. Talley*, 265 A.3d 485, 525 (Pa. 2021), we vacate the order and remand for the court to conduct a hearing on the motion.[2]

The relevant factual and procedural history of this case follows: Petitioner's mother, Vilma Souza, sought to have Petitioner committed for mental health treatment. Consequently, a warrant was issued under Section 302 of the Mental Health Procedures Act.[3] When law enforcement attempted to take Petitioner into custody pursuant to the warrant and deliver him to a mental health facility, Petitioner allegedly assaulted a police officer, leading to charges of two counts of aggravated assault, simple assault, and resisting arrest.[4]

In February 2024, Petitioner was preliminarily arraigned by a magisterial district judge who denied bail. Later that same month, the trial court reviewed and affirmed the denial. Thereafter, in May 2024, Petitioner appeared before the Honorable Bruce R. Beemer for a bail hearing, following which the trial court again denied bail.

In September 2024, Petitioner filed a petition seeking a court-ordered mental health and competency evaluation. Eventually, Petitioner was

---

[2] As more fully discussed below, Petitioner captioned the filing as a "Motion to Reconsider Bail Revocation," but the trial court docketed and treated it as a motion to modify bail.

[3] *See* 50 P.S. § 7302.

[4] *See* 18 Pa.C.S.A. §§ 2702(a)(1), (2); 2701(a)(1); and 5104.

committed to Torrance State Hospital ("Torrance"), as his mental health had deteriorated. Upon his return to Allegheny County Jail from Torrance, the trial court granted bail, and Petitioner was released to the supervision of Justice Related Services ("JRS") in March 2025.

In July 2025, after Petitioner had been removed from multiple treatment or housing programs while on bail, JRS moved before the trial court to be released from its supervision of Petitioner's bond.[5] On July 24, 2025, the Honorable Jill E. Rangos, sitting as motions judge, granted JRS's motion and revoked Petitioner's bail.[6]

That same day, Petitioner filed the instant underlying motion for modification of bail.[7] In his motion, Petitioner alleged that, by March 2025, upon his return from Torrance to Allegheny County Jail, he was transported to the hospital for emergency medical treatment. **See** Pet'r's Mot., 7/24/25,

---

[5] While JRS's motion does not appear on the trial court docket, the parties concede that JRS was the moving party.

[6] The parties and the trial court agree that Judge Rangos conducted a hearing on July 24, 2025; yet the notes of testimony from this hearing are unavailable.

[7] Even though it is titled as a reconsideration request, Petitioner's motion does not seek the explicit reversal of Judge Rangos's July 24 order. Rather, it appears to be a standalone request for reinstatement of bail. Indeed, the trial court docketed the motion as a "Motion for Modification of Bail." As our Supreme Court has noted, the caption of a pleading does not necessarily control. **See Scott v. Pennsylvania Bd. of Probation and Parole**, 284 A.3d 178, 189 (Pa. 2022) (noting the Court had previously stated that "[m]isdesignation does not preclude a court from deducing the proper nature of a pleading").

at 8. Petitioner further alleged that he required "a tricuspid heart valve replacement" and that a cardiac surgery was scheduled for July 31, 2025, with an admission date of July 28, 2025. *Id.* at ¶¶ 8-9. Petitioner asserted that the trial court's removal of JRS, revocation of bail, and his subsequent incarceration occurred just four days prior to his scheduled hospital admission. *See id*. at ¶¶ 10-11.[8]

Petitioner requested that the trial court grant him non-monetary bond with pre-trial electronic monitoring. *See id*. at 4 (unpaginated). In support, he asserted that without the scheduled heart surgery and appropriate recovery, he could die. *See id*. at ¶ 15. He further claimed that he neither posed a threat to the community nor was a flight risk. *See id*. According to Petitioner, his continued incarceration would "do nothing but exacerbate his condition." *Id*. at ¶ 17. Petitioner asserted his previous incarceration resulted in his "severe decompensation and commitment to Torrance State Hospital." *Id*. He also alleged that Allegheny County Jail was incapable of providing him with constitutionally appropriate medical and psychiatric care. *Id*. Finally, Petitioner emphasized that his mother—whose concern for his mental health initiated this case—"desperately wants" him home, "is not afraid of" him, and

---

[8] Petitioner acknowledged that he was "non-compliant" with JRS, in that he had been discharged from treatment programs, but stressed that "a feature of psychotic disorders is a failure to recognize that one is seriously mentally ill." Pet'r's Mot., 7/24/25, at ¶ 16.

- 4 -

is not concerned about her own or others' safety if he were released.  *Id*. at ¶ 18.

On July 25, 2025, Judge Beemer, who is assigned to adjudicate Petitioner's criminal case, and was out of town at the time, remotely reviewed Petitioner's motion and denied it without a hearing.  On July 29, 2025, Petitioner filed the instant Petition, presenting a single issue for this Court's review:

> Whether the Honorable Judge Rangos—and by extension, Judge Beemer—erred when denying [Petitioner's] bail because the Commonwealth did not present competent evidence that proved that it is "substantially more likely than not that (1) the accused will harm someone if he is released and that (2) there is no condition of bail within the court's power that reasonably can prevent the defendant from inflicting that harm."  [] *Talley*, 265 A.3d [at] 525 . . .[.]

Pet., 7/29/25, at ¶ 15.[9]

Generally, this Court reviews orders denying bail for an abuse of discretion, reversing only where the trial court misapplies the law, or its judgment is manifestly unreasonable, or the evidence of record shows that its decision is a result of partiality, prejudice, bias, or ill will.  *See Commonwealth v. Bishop*, 829 A.2d 1170, 1172 (Pa. Super. 2003).  Moreover, this Court's scope of review from the denial of bail is limited to the

---

[9] In response to the Petition, this Court directed: (1) the trial court to state on the record its reasons, as required under Pa.R.A.P. 1762(e), for the July 25 denial of Petitioner's motion for bail modification; and (2) the Commonwealth to respond.  Both have complied with this Court's order.

record evidence adduced at the bail hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party. **See Talley**, 265 A.3d at 527. This Court will affirm the trial court's denial of bail "if [the court's] factual findings are supported by competent evidence of record, and [its] legal conclusions drawn therefrom are correct." ***Id***.

The right to bail,[10] with certain exceptions, is enshrined in Article I, Section 14 of the Pennsylvania Constitution, which provides in pertinent part:

> All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or **unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great**[.]

Pa. Const. art. I, § 14 (emphasis added).

The **Talley** Court explained:

> Proof is evident or presumption great calls for a substantial quantity of legally competent evidence, meaning evidence that is admissible under either the evidentiary rules, or that is encompassed in the criminal rules addressing release criteria. The Commonwealth's feelings about evidence that it may be able to introduce are not relevant considerations. **And, because a court must be able to evaluate the quality of the evidence, it also cannot rely upon a cold record or untested assertions alone.** When the Commonwealth seeks to deny bail, the quality of its evidence must be such that it persuades the bail court that it is substantially more likely than not that the accused is

---

[10] The fundamental purpose of bail is to ensure the accused's presence at trial. **See Talley**, 265 A.3d at 515 n.18; **see also** Pa.R.Crim.P. 103 (defining bail as "the security or other guarantee required and given for the release of a person, conditioned upon a written undertaking, in the form of a bail bond, that the person will appear when required and comply with all conditions set forth in the bail bond").

nonbailable, which is just to say that the proof is evident or the presumption great. In making its case, the Commonwealth cannot satisfy its burden of persuasion solely by stacking inference upon inference. Nor can the connection between the evidence and what it seeks to prove be conjectural. Rather, the combination of the evidence and inferences must be reasonable, credible, and of solid value.

265 A.3d at 524-25 (quotation marks, brackets and citations omitted) (emphasis added). Put differently, our Supreme Court determined that courts are required to consider testimony, exhibits, or other competent evidence when ruling on a motion for bail. *See id*. at 527-28 (holding that "an affidavit of probable cause simply is not conducive to assessing the persuasiveness of the Commonwealth's case under the [substantially more likely than not standard]").

After conducting a thorough analysis of a defendant's right to bail pursuant to Article I, Section 14 of the Pennsylvania Constitution, the ***Talley*** Court concluded:

[A] trial court may deny bail under Article I Section 14 when the Commonwealth's proffered evidence makes it substantially more likely than not that the accused: (1) committed a capital offense, (2) committed an offense that carries a maximum sentence of life imprisonment, or ***(3) presents a danger to any person and the community, which cannot be abated using any available bail conditions.*** That determination requires a qualitative assessment of the Commonwealth's case.

265 A.3d at 525-26 (emphasis added). The Court provided a non-exhaustive list of factors a trial court should consider in denying bail. They include: (1) the defendant's character; (2) relevant behavioral history or past patterns of conduct; (3) the gravity of the charged offense; (4) the conditions of bail

reasonably available to the court; and (5) any evidence that tends to show that those conditions would be inadequate to ensure the protection of any person or the community. *See id*. at 525.[11] Thus, according to the Court, "[i]f the balance of the evidence is rife with uncertainty, legally is incompetent, requires excessive inferential leaps, or lacks any indicia of credibility, it simply is not evident proof, nor can it give rise to a great presumption, that the accused is not entitled to bail." *Id*. at 526. Moreover, Rule 520 of the Pennsylvania Rules of Criminal Procedure provides that "[b]ail before verdict shall be set in all cases as permitted by law. Whenever bail is refused, the bail authority shall state in writing or on the record the reasons for that determination." Pa.R.Crim.P. 520(A).[12]

Petitioner claims that the trial court erred in denying him bail because "no competent evidence was presented by the Commonwealth that showed it was substantially more likely than not that [Petitioner] would harm someone if released, and that there are no conditions of bail that could reasonably prevent [Petitioner] from inflicting that harm, as required by *Talley*." Pet.,

---

[11] These factors either largely mirror or overlap with factors set forth in Pa.R.Crim.P. 523(A), relating to release criteria.

[12] Similarly, Rule 1762(e) of the Pennsylvania Rules of Appellate Procedure provides in pertinent part that "[u]pon receipt of a copy of . . . a petition for specialized review . . . that does not include an explanation for the bail determination, the judge who made the bail determination being reviewed shall forthwith file of record a brief statement of the reasons for the determination[.]" Pa.R.A.P. 1762(e).

7/29/25, at ¶ 16. Petitioner argues that prior to Judge Beemer denying his motion for bail modification/reinstatement, the Commonwealth presented no evidence under **Talley** at the preceding July 24 hearing before Judge Rangos to warrant the denial of bail. Petitioner further claims that JRS's removal from Petitioner's bond "is not dispositive to the questions of likely harm and preventative bail conditions." **Id**. at ¶ 16(a). He argues that the trial court denied him bail "due to some vague notion of a threat to [his] mother['s] safety, which relies on hearsay." **Id**. at ¶ 17.[13] He asserts that Allegheny County Jail is unable to meet his mental health needs, as evidenced by his severe decompensation that necessitated commitment to Torrance. **See id**. at ¶ 18(a), (b). Petitioner further asserts that the county jail is "ill-equipped to afford him a safe recovery after heart surgery." **Id**. at ¶ 18(b).

In its statement in lieu of opinion, Judge Beemer noted that when Petitioner filed his July 24 motion for bail modification, following the revocation of Petitioner's bail by Judge Rangos, he "was attending a judicial conference out of town" and that Petitioner's counsel was aware of the court's unavailability. **See** Statement, 8/27/25 (unnumbered at 1). The trial court emphasized that, given Judge Beemer's unavailability, Petitioner's counsel

---

[13] According to Petitioner, his mother is not afraid of him and actively wants his release. **See** Pet., 7/29/25, at ¶ 18. To underscore this point, Petitioner notes that his mother attended every bail hearing to express her support, but her views were ignored. **See id**.

knew that the court would be unable to conduct a hearing on the motion. *See id*.

The court further explained that "[Petitioner] sought a *reinstatement of bond* to allow [Petitioner] to be released to his mother's home as he had a scheduled medical procedure the following week." Statement, 8/27/25, at 2 (some emphasis added). The court reasoned that Petitioner was "seeking a form of relief separate and distinct from the hearing and ruling made by Judge Rangos." *Id*. In light of the time-sensitive nature of the motion—given Petitioner's impending medical procedure—the trial court "reviewed the motion remotely and issued a denial on July 25, 2025." *Id*.[14]

Here, as noted, Petitioner's July 24 filing—notwithstanding its title and, more importantly, given its substance—was properly treated by the trial court

---

[14] With respect to the merits of Petitioner's claims, the Commonwealth argues that it "has no way to address [P]etitioner's claim here" because it does not possess a copy of the July 24 hearing transcript. *See* Commonwealth's Answer, 8/19/25, at 7. Nonetheless, the Commonwealth focuses on the order by Judge Rangos revoking Petitioner's bail in response to JRS's motion, not a motion filed by the Commonwealth. *See id*. at 7. The Commonwealth argues that because it was not the moving party initially, it had no obligation to put on evidence. *See id*. Additionally, recognizing that Petitioner stands charged with multiple serious felonies and recalling Petitioner's own concession that, although released on bail on March 27, he was subsequently removed from multiple treatment programs for noncompliance, the Commonwealth urges this Court to affirm the trial court's order. However, as noted above, the order appealed from here is Judge Beemer's denial of Petitioner's motion for bail, meaning the trial court denied Petitioner bail, which requires there to have been a hearing at which adequate evidence was adduced for such a ruling, consistent with *Talley*.

as a request for reinstatement of bail.[15] At the time the motion was filed, the assigned judge, Judge Beemer, was unavailable to conduct a hearing, and, as a result, no hearing was held. Thus, the Commonwealth had no opportunity to present evidence or address the factors required under **Talley**. In light of these unusual circumstances—*i.e.*, the absence a hearing on Petitioner's bail motion at which the Commonwealth could put on evidence in opposition if it so chose—this Court is constrained to vacate the trial court's July 25th Order and remand the matter to the trial court, specifically Judge Beemer, to conduct a hearing consistent with the standards articulated in **Talley**. Ruiz shall not be released prior to the bail hearing and Judge Beemer's decision on the bail motion.

Order vacated. Case remanded. Jurisdiction relinquished.

_____

[15] The Commonwealth suggests that if the Court considered the title of Petitioner's motion to control, then he is arguably appealing from a reconsideration order, which is non-appealable, and which would warrant quashal of this appeal. **See** Commonwealth's Answer, 8/19/25, at 3-4. However, the Commonwealth also concedes that Petitioner's motion could "reasonably be construed as a motion to *reinstate* bond instead," as the trial court so concluded. **See id**. at 4. We appreciate the Commonwealth's candor, and for the reasons stated herein consider Petitioner's motion to be for the reinstatement of bail.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/24/2025